terial, and in connection with such objection the following occurred.

"Mr. Castledine: * * * It's based on what other people have said as to his reputation being good. Of course, we're not allowed to prove that he's got a bad reputation and we are not allowed to go—even to go into it, even ask one question about it.

"Mr. Martin: We object to those remarks as not the law at all.

"Mr. Castledine: Yes, it is, your Honor.

"Mr. Martin: Excuse me.

"Mr. Castledine: If I attempted to ask one question about his bad reputation this Court would declare a mistrial.

"Mr. Martin: You through. All right, sit down. I object to his remarks as a misstatement of the law. That when the defendant puts his character and reputation in issue it opens the door wide open for the State to ask any questions he wants to. Now I have asked my question and * * *.

"The Court: I sustain the objection, Mr. Martin, you may have your bill.

"Mr. Martin: Thank you very much. Note our exception. You may have the witness."

 The statement of the attorney for the prosecution was of course incorrect and improper, and in effect conveyed to the jury the suggestion that appellant's reputation in the particulars mentioned, notwithstanding the testimony of his character witnesses to the contrary, was bad; that witnesses were available to so show, but the law would not permit the State to offer the evidence.

The improper remarks, under the record here, are not such as may have been cured by instruction to the jury to disregard, and they call for reversal.

There are other bills which are claimed to show undue prejudice against appellant in the matter of punishment assessed, including remarks in argument; evidence heard in the presence of the jury panel in regard to the effort of the State to obtain a forfeiture of appellant's appearance bond; and interrogation of a character witness as to the Chamber of Commerce, of which he was a member, having made investigation, invited in speakers in an effort to eliminate or cut down drunk driving in the county.

These last matters, we trust, will not arise at another trial, and we need not here determine whether reversible error is shown thereby.

The judgment is reversed and the cause remanded.

### Ex parte Fred A. MEADOWS.

#### No. 27690.

Court of Criminal Appeals of Texas.

June 8, 1955.

See also 156 Tex.Cr.R. 417, 243 S.W. 2d 169.

---

No attorney on appeal for appellant.

Leon Douglas, State's Atty., Austin, for the State.

MORRISON, Presiding Judge.

Relator, an inmate of the Texas Prison System, seeks his discharge by writ of habeas corpus, alleging that he plead guilty before the court without counsel and without having counsel appointed to represent him, as required by Article 10a, V.A.C.C.P.

Upon receipt of appellant's application, we entered an order directing the Judge of the Criminal District Court of Jefferson County to develop the facts touching relator's allegation.

The hearing was had and the facts certified to this Court in accordance with the terms of Article 119, V.A.C.C.P.

The relator testified that he was brought down from the jail to Judge Shivers' court sometime in 1944, that he had an agreement with an assistant district attorney to plead guilty in two cases, and that the sentences were to run concurrently, that he stepped up to the judge's bench, told the judge that he wanted to plead guilty, and that his plea was received. He stated that he was not represented by counsel, and none was appointed to represent him. He stated further that he did not know that his sentences were cumulated until after he was received at the penitentiary.

Honorable M. H. Oldham testified that he was Judge of the County Court at Law of Jefferson County from 1943 until 1947 and that he at no time represented relator, either by employment or appointment, in any criminal case in Judge Shivers' court. He stated that he knew no other lawyer in his part of the State whose name was Oldham and who had been on the bench.

Justice of the Peace Bell testified that at the time relator was tried he was acting as Bailiff in the Criminal District Court of Jefferson County, that he brought the relator down from the jail, and carried him before Judge Shivers, who received relator's plea of guilty in two felony cases. He stated that relator had no attorney, and none was appointed to represent him. He corroborated relator's statement that relator had been promised that his sentences would run concurrently.

James S. Fuller, Assistant District Attorney, testified that he had searched the records of the clerk's office and failed to find any waiver and approval form which would normally carry the signature of an attorney representing an accused who had plead guilty before the court.

The State relied upon the records only. The judgments in causes numbered 15,869 and 15,875 contain the usual recitations, "Fred Meadows appeared in person, his counsel also being present."

The docket sheets in both cases were introduced. In Cause No. 15,875, we find the notation, "Dft. Fred Meadows rep. by Judge Oldham." This sentence has long since been served.

The sentences show to have been made cumulative.

While we find a conflict in the dates as shown by the records and as testified to by the witnesses, we have concluded that relator's allegation as to Cause No. 15,869 was established.

The writ of habeas corpus is granted, and relator is ordered delivered to the Sheriff of Jefferson County to await the further order of the Criminal District Court of Jefferson County in Cause No. 15,869 in said court.